Paper No. 22
HRW

THIS DISPOSITION IS NOT
CITABLE AS PRECEDENT OF THE TTAB          JULY 9, 99

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

Order Sons of Italy in America

v.

The Memphis Mafia, Inc.
_____

Cancellation No. 25,282
_____

Joseph Scafetta, Jr., Esq. for Order Sons of Italy in America.

Marty Lacker for The Memphis Mafia, Inc., pro se.
_____

Before Simms, Cissel and Wendel, Administrative Trademark Judges.

Opinion by Wendel, Administrative Trademark Judge:

Order Sons of Italy in America (Order) has filed a petition to cancel Registration No. 1,891,835 of the mark THE MEMPHIS MAFIA for "entertainment services, namely, rendering talks relating to popular music and music

personalities,"[1] pursuant to Section 2(a) of the Trademark Act.[2]

In the petition to cancel, petitioner alleges that the Order, since its founding in 1905, has been engaged in providing fraternal assistance and moral support to its Italo-American members through approximately 2700 lodges in the United States and Canada; that at many of the lodges entertainment services are provided, which may include talks relating to famous Italian Americans; that the Commission for Social Justice (CSJ) is a separate corporate entity of the Order which works to eradicate bias, bigotry and prejudice against Italo-American citizens; that the CSJ has particularly fought to eliminate the indiscriminate use of the term "Mafia"; that although "Mafia" originates from a battle cry used against the French in the invasion by Napoleon in 1799, the term now has an entirely different meaning; that the Order and the CSJ object to use of the term beyond the description of a small group of organized criminals in Italy and America; that "Mafia" is a word

---

[1] Reg. No. 1,891,835, issued Apr. 25, 1995, from an intent-to use application filed Oct. 4, 1990. A statement of use was filed claiming first use dates of August 4, 1994.

[2] Section 2(a) reads, in pertinent part:
      No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it –
          (a)   consists of or comprises ...matter which may disparage... persons living or dead, institutions, beliefs, or national symbols ... .

detested by most law-abiding Italians and Italian Americans, and to call an honest Italian or Italian American a member of any "Mafia" is a grave insult that disparages the character and damages the reputation of the individual by labeling him or her a criminal; and thus the Order petitions to cancel the registration of the mark THE MEMPHIS MAFIA because its use for the services listed disparages the members of the Order and brings the Order as an institution into contempt or disrepute.

Respondent, in its answer, denied the salient allegations of the petition to cancel.

The record consists of the file of the involved registration and the trial testimony taken by petitioner,[3] with accompanying exhibits.[4]  Both parties filed briefs on the case, but no oral hearing was requested.

---

[3] During its testimony period, respondent filed a communication signed by Mr. Lacker, as an officer of respondent, entitled "Registrant's Testimony and Answer to Petitioner", consisting of statements and accompanying exhibits with respect to the history and functions of respondent, as well as a response to petitioner's testimony.  Petitioner filed its objections to the admissibility of this as evidence on respondent's behalf and a motion to strike the same, in that there had been no agreement between the parties, as required by Trademark Rule 2.123(b), that respondent could file testimony in the form of an affidavit or declaration. Petitioner's motion to strike was granted and accordingly, respondent's "testimony and answer" and the exhibits attached thereto, have been given no consideration.

[4] Petitioner also filed a notice of reliance listing the three trial depositions taken and the exhibits introduced thereby. Since all testimony depositions must be filed with the Board, and, when filed, automatically become part of the record, the filing of a notice of reliance was unnecessary.  See Trademark Rule 2.123(h).

By the testimony deposition of John G. Spatuzza, an attorney and a past president of the Order and present member of the trademark committee of the CSJ, petitioner has established that the Order was founded in 1905; that there are 2700-2800 existing lodges with about 450,000 family memberships throughout the United States; and that the CSJ is a separately chartered arm of the Order to oppose discrimination.  Mr. Spatuzza further testified that, as president of the Order, he wrote to Attorney General Griffen Bell in March 1977 regarding renewed use by the Justice Department of the terms "Mafia" and "Cosa Nostra," after a prior ban issued by Attorney General John Mitchell in 1970; that a response was received from Griffen Bell affirming that "terms like 'mafia' and 'cosa nostra' have no place in the discourse of Justice Department officials" and that it "has been this Department's policy not to use such disparaging terms when referring to organized crime.  This is and will continue to be our policy."  Mr. Spatuzza also identified the early memorandum issued by Attorney General John Mitchell in which the Attorney General noted that it had "become increasingly clear that many good Americans of Italian descent are offended by the use of the terms Mafia and Cosa Nostra in news reports dealing with organized crime," and that "since there is nothing to be gained by

4

using these terms except to give gratuitous offense, I am requesting that we discontinue their use in news releases, speeches or other public statements of this Department..."

In the deposition of Vincent S. Romano, a retired school supervisor and the present president of the CSJ,[5] he introduced evidence of the work done by CSJ to fight discrimination against Italian-Americans in publications, television and radio shows, advertising and the like, as well as its opposition to the registration of trademarks considered disparaging by members of the Order.  Mr. Romano also identified a copy of an advertisement placed by CSJ in the Journal of the Patent and Trademark Office in September 1995 advising trademark practitioners that the Order had opposed and would continue to oppose on the grounds of disparagement any applications for marks including the terms COSA NOSTRA, MAFIA, MAFIOSO, DAGO, MAFIOSI or WOP.  In line with this, Mr. Romano put into evidence a dictionary definition for "mafia" and one for "mafioso" which he believed to be appropriate.[6]  He also identified copies of notices of opposition[7] filed by the Order against the

---

[5] This deposition was taken May 23, 1997.

[6] The selected definitions from *The American Heritage Dictionary* (2nd College Ed.) were:
    Mafia  2. An alleged international criminal organization believed active, esp. in Italy and the United States.
    Mafioso   A member of the Mafia.

[7] Opposition Nos. 97,043 and 97,639.

registration of the marks MAFIA MOB for clothing and MAFIA

FOR MOB for perfumes and the like and the subsequent orders

of default judgment in favor of the Order issued by the

Board.  In addition, Mr. Romano identified a letter received

from John Keeney, Acting Assistant Attorney General, in

March 1997, in which he stated that the Justice Department

"continues to adhere to the spirit of the Mitchell and Bell

memoranda, recognizing that the terms 'La Cosa Nostra' and

'mafia' are offensive to some of the citizens of this

country."  Mr. Keeney goes on to state that public

statements by the Justice Department only include references

to "La Cosa Nostra" or "mafia" if documented by the court

record, and that the Justice Department believes

> no one should ever use these terms as a
> shorthand for the phrase "organized crime,"
> suggesting that organized crime is somehow
> confined to descendants of Italian heritage
> or that Italian-Americans condone organized
> crime. ... The Department knows that self-
> described "La Cosa Nostra" or "mafia" groups
> neither reflect the high morals of, nor
> speak for, our Italian-American communities.

In the deposition of Gabriel Bevilacqua, an attorney

and a past president and present voting member of CSJ, he

identified a copy of a publication of the U.S. Bureau of the

Census showing that in 1990 the Italian ancestry group

constituted 5.9 percent of the U. S. population.  Mr.

Bevilacqua further described the policy adopted by CSJ in

1990 of opposing the registration of trademarks considered

disparaging to Italian-Americans and introduced copies of
oppositions filed by the Order against registration of the
marks MAFIA for business services,[8] MA-FI-O-SO for
entertainment services,[9] and DON VITO for beer and malt
liquor.[10]  In each opposition, judgment by default was
entered in the Order's favor.

Mr. Bevilacqua also placed in evidence a public opinion
study conducted in 1990 at the request of the Order with
respect to prevalent social attitudes toward certain ethnic
groups including Italian-Americans.  He drew special
attention to the fact that 74 percent of the 1,000 persons
surveyed identified Italians as the ethnic group which is
"into a lot of the organized crime in this country."  He
further introduced a position paper generated by the CSJ in
1990 setting forth the belief of the Order that "use of the
term 'mafia' as a generic description of organized crime
leads to the unfavorable association of our people with
criminality" and that "our community cannot possibly
tolerate the use of this code word."  The Order sets forth
the viewpoint that since organized crime encompasses persons
of all races and national origins, it should not be equated

---

[8] Opposition No. 83,102.

[9] Opposition No. 88,377.

[10] Opposition No. 89,377.

with Italian-Americans, as is the effect of using the word "mafia."

Finally, petitioner's three deponents, after counsel's moving, without objection, for them to be qualified as expert witnesses in the area of defamation and disparagement, testified as to their opinions that the mark THE MEMPHIS MAFIA, when used for the listed entertainment services, disparages the members of the Order and brings the Order as an institution into contempt and disrepute; that the mark perpetuates the stereotype fostered on the American public of a connection between Italian-Americans and organized crime, or criminal activity in general; and that it will have a negative impact on not only members of the Order, but all Americans of Italian descent. These witnesses also testified to the effect that, since the Order sponsors entertainment services at its lodges and various groups advertise in its publications, and since there are many Italians in the music business, people might believe that there was a relationship between the Order and respondent's services.

On the basis of the foregoing evidence, which stands unrebutted by respondent,[11] petitioner takes the position

---

[11] As previously pointed out, the "testimony and answer" submitted by respondent has been stricken from the record. While respondent has made similar arguments in its brief concerning the self-serving nature of the testimony of petitioner's three witnesses and questioned their qualification as expert witnesses,

that the mark THE MEMPHIS MAFIA, as used in connection with respondent's entertainment services, may disparage the members of the Order and bring the Order as an institution into contempt.  Petitioner argues that although the Order only consists of 3.1% of the Italian-Americans in the country, it still should be considered a substantial composite of the general public for purposes of this proceeding, and also as the best representative of the interests of the Italian-Americans, the fifth largest ethnic group in this country.  Petitioner points to the statements of the Justice Department as evidence of recognition of the disparaging nature of the term "mafia" to this ethnic group. Petitioner stresses the unrebutted testimony of its expert witnesses that the mark THE MEMPHIS MAFIA, and its "negative innuendo" is offensive to both members of the Order and to the "targeted" Italian-American community in general. Petitioner contends that words such as "mafia" and "mafiosi" are specifically addressed to the Italian-American community and hold the members of this community up to ridicule. Petitioner argues that use of the mark THE MEMPHIS MAFIA in connection with entertainment services is particularly offensive because the "choice" of the word "mafia" plays on

_____

the fact remains that respondent neither  attended the depositions nor properly introduced evidence to rebut the testimony taken therein.

the fictional gangster scenes and the "mafia" criminal life style glorified in the movies and on television.

Insofar as the Order itself is concerned, petitioner advances the argument that nonmembers of the Order might presume a connection between the entertainment services offered under the mark THE MEMPHIS MAFIA and the Order, since the Order does sponsor social activities and entertainment, and that such non-members would consider the Order to be contemptible for its use of the term MAFIA.

Respondent, in its brief, argues that the purpose of the group of men dubbed "The Memphis Mafia" is solely to perpetuate the memory of Elvis Presley; that the group consists of associates and employees of Elvis Presley who now give talks about Elvis; that these persons, when traveling with Elvis, were in no way thought of as gangsters or mobsters; that the mark THE MEMPHIS MAFIA, as used in connection with respondent's services, is not intended to disparage the Italian people; and that the talks are not directed to crime, ethnic groups or anything other than Elvis Presley. Respondent argues that the term MAFIA, as used in its mark, falls within the dictionary definition of "mafia" as "an exclusive and dominant group."[12]

---

[12] Respondent cites *Webster's Collegiate Dictionary* (3d ed.) for this definition.

In its recent decision in Harjo v. Pro-Football, Inc., 50 USPQ2d 1705 (TTAB 1999), the Board set forth a two-step test for determining whether matter may be disparaging under Section 2(a).[13]   Under this test, the following factors must be considered:

> (1)   what is the likely meaning of the matter in question, taking into account not only dictionary definitions, but also the relationship of the matter to the other elements in the mark, the nature of the goods or services, and the manner in which the mark is used in the marketplace in connection with the goods or services; and
>
> (2)   if that meaning is found to refer to identifiable persons, institutions, beliefs or national symbols, whether that meaning may be disparaging[14] to a substantial composite of the referenced group.

Turning first to the likely meaning of the term "Mafia" as used in respondent's mark THE MEMPHIS MAFIA, we have taken under consideration, as our initial source of information, dictionary definitions, as we did in the *Harjo*

---

[13] As the Board noted in *Harjo*, there are different tests for disparagement depending upon whether the party alleging disparagement is an individual or commercial corporate entity (Greyhound Corp. v. Both Worlds, Inc., 6 USPQ2d 1635 (TTAB 1988)), or a non-commercial group, such as a religious or racial group (In re Hines, 31 USPQ2d 1635 (TTAB 1994), vacated on other grounds, 32 USPQ2d 1376 (TTAB 1994) and the *Harjo* case).   Here, although in its petition to cancel, petitioner alleges disparagement of the Order as an entity and the members thereof, petitioner has actually tried the issue of whether respondent's mark is disparaging to Italian-Americans in general.   Thus, as in petitioner's copending Opposition No. 99,992, we find the test enunciated in the *Harjo* case to be the appropriate one.

[14] The Board found matter which may "disparage" to include matter which may "dishonor by comparison with what is inferior, slight, deprecate, degrade, or affect or injure by unjust comparison." Id. at 106-107.

case.   While petitioner has introduced one definition and

respondent has referred to another definition, we find it

advisable to take judicial notice of additional definitions,

in their entireties.   See University of Notre Dame du Lac v.

J.C. Gourmet Food Imports Co., 213 USPQ 594 (TTAB 1982),

aff'd 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).   Thus,

we note the following definitions:

1. in Sicily a) [m-] an attitude of popular hostility
   to law and government b) a secret society
   characterized by this attitude
2. in the U.S. and elsewhere, a secret society, of
   Italian origin, engaged in such illegal activities
   as gambling, prostitution, and illicit trade in
   narcotics
3. [m-] any exclusive or dominating group.
   *Webster's New World College Dictionary* (3$^d$ Ed.
   1997).

1. a hierarchically structured secret organization
   allegedly engaged in smuggling, racketeering,
   trafficking in narcotics, and other criminal
   activities in the U. S., Italy, and elsewhere.
2. (in Sicily) a. (l.c.) a popular spirit of hostility
   to legal restraint and to the law, often
   manifesting itself in criminal acts. b. a 19th
   century secret society, similar to the Camorra in
   Naples, that acted in this spirit.
3. (often l.c.) any small powerful or influential
   group in an organization or field; clique.
   *The Random House Dictionary of the English Language*
   (2$^d$ Ed. 1987).

Upon consideration of all of the definitions before us,

we find that, in the United States, the predominant meaning

of "Mafia," especially when used as a proper noun, is that

of a secret organization of Italian origin engaged in

criminal activities.   The term may, however, also encompass

powerful or influential groups which are not necessarily

either formed of persons of Italian descent or operated for the purposes of criminal activity. There is no indication, in contrast to the *Harjo* case, that the word "Mafia" is offensive or disparaging per se to any ethnic group. Petitioner has, in fact, acknowledged that the word is appropriately used when reference is accurately being made to the specific international criminal organization.

Our next step is to determine the meaning most likely to be attributed to the term "Mafia," as it is being used in respondent's mark and in connection with respondent's services. The mark is THE MEMPHIS MAFIA and the services are entertainment services in the nature of talks relating to music personalities. While respondent has stated that the talks are in fact restricted to one performer, Elvis Presley, we cannot construe the topic of the talks so narrowly, inasmuch as there is no evidence of record to substantiate this representation, nor are the services, as identified, so limited.

From the record before us, it appears that there is no connection whatsoever between respondent's entertainment services and the dictionary definition of "Mafia," as an organization dedicated to criminal activities composed of persons of Italian origin. Instead, the only relevant meaning of the term MAFIA as used in respondent's mark would presumably be the definition of "mafia" as an exclusive, or

small and powerful, group or clique.  But, admittedly we have nothing specific upon which to base any conclusion that this was the intended meaning of the term as used in respondent's mark.  We have no evidence before us with respect to the circumstances under which the group which revolved around Elvis Presley was given the name "The Memphis Mafia," which the group subsequently adopted as a mark for its entertainment services.  We have no information as to the perceived connotation of this name, or of the nature of the group with which it was used, other than that the group consisted of persons close to Elvis Presley.[15]

While petitioner takes the broad stand that use of the term "Mafia" in any way, other than when accurately used in reference to one specific criminal organization, is a slur to the Italian-American ethnic group, the record is not persuasive of this position.  The situation here is not similar to the *Harjo* case, where all usages of the term "Redskins" were found to be offensive to Native Americans.  Here, from the evidence of record, particularly the memoranda from the Justice Department, it appears that it is the inaccurate use of the term "Mafia" as a generic descriptor for all organized crime, regardless of origin, which is the usual manner in which Italian-Americans become

---

[15] It is in the specimens of record in the registration file that "The Memphis Mafia" is identified as the "name of the group of guys close to Elvis."

14

associated in a derogatory sense with the term.  While in the public opinion study made of record by petitioner a general association was found to exist between Italian-Americans and organized crime, no mention was made of the term "Mafia," or whether its use, regardless of context, would automatically trigger this association.

Instead, petitioner relies upon the testimony of its three witnesses, said to be experts in the field of disparagement to Italian-Americans, to the effect that the mark THE MEMPHIS MAFIA perpetuates the stereotype of a connection between Italian-Americans and organized crime and thus has a negative impact on this ethnic group.  Although we have carefully considered this testimony, we cannot ignore the fact that these witnesses are all active members of the Order.  Their testimony cannot be viewed as other than reflecting the objectives of this organization. Accordingly, this testimony must be considered as potentially self-serving in nature and not necessarily as probative as, for example, the opinion of an expert witness not associated with petitioner.  Moreover, the Board is required to reach its own conclusions with respect to the ultimate issue of disparagement, rather than relying upon the opinions of witnesses, even if these witnesses were

truly qualified as experts.  See Saab—Scania Aktiebolag v. Sparkomatic Corp., 26 USPQ2d 1709 (TTAB 1993).

Accordingly, we find that petitioner has failed to carry its burden of proving that the term "Mafia" as used by respondent in the mark THE MEMPHIS MAFIA, in connection with its entertainment services, may disparage either the members of the Order or Italian-Americans in general.[16]

Decision: The petition to cancel is denied.

R. L. Simms

R. F. Cissel

H. R. Wendel
Trademark Administrative Judges,
Trademark Trial and Appeal Board

---

[16] In view of this decision, we find no need to consider petitioner's further allegations that the mark would bring the Order as an institution into contempt or disrepute.